MEM
F.# 2018R02127

F I L E D
IN CLERK'S OFFICE
U.S. DISTRICT COURT E.D.N.Y.

★   AUG 06 2019   ★

LONG ISLAND OFFICE

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

– – – – – – – – – – – – – – – – – – – – X

IN THE MATTER OF AN APPLICATION
FOR SEARCH WARRANTS FOR:

THE PREMISES KNOWN AND DESCRIBED
AS:

A ROSE GOLD AND WHITE I-PHONE
 ("SUBJECT TELEPHONE #1");

A BLACK TCL ANDROID PHONE
 ("SUBJECT TELEPHONE #2"); AND

A BLACK AND SILVER I-PHONE SE PHONE
("SUBJECT TELEPHONE #3").

– – – – – – – – – – – – – – – – – – – X

AFFIDAVIT IN
SUPPORT OF
SEARCH WARRANTS

(Fed. R. Crim. P. 41)

**MJ  19-  704**

EASTERN DISTRICT OF NEW YORK, SS:

ROBERT STUEBER, being duly sworn, deposes and states that he is a Task

Force Officer ("TFO") assigned to the Drug Enforcement Administration ("DEA"), duly

appointed according to law and acting as such.  Upon information and belief, there is

probable cause to believe that there is located in the PREMISES KNOWN AND

DESCRIBED AS: A ROSE GOLD AND WHITE I-PHONE ("SUBJECT TELEPHONE

#1"); A BLACK TCL ANDROID PHONE ("SUBJECT TELEPHONE #2"); AND

A BLACK AND SILVER I-PHONE SE PHONE ("SUBJECT TELEPHONE #3")

(collectively, the "SUBJECT TELEPHONES"), further described in Attachments A, B, and,

the things described in Attachment D, which constitute evidence, fruits and instrumentalities

of conspiracies to distribute and possess with intent to distribute narcotics, including, cocaine

base, cocaine, heroin, N-phenyl-N-[2-phenylethyl)-4piperidinyl] propanamide ("fentanyl"),

acetyl fentanyl and/or use of firearms in connection with a drug trafficking crime, in violation

of Title 21, United States Code, Sections 841(b)(1)(A)(i), 841(b)(1)(A)(ii)(II),

841(b)(1)(A)(iii), 841(b)(1)(A)(vi) and 841(b)(1)(B)(vi) and 846, and Title 18, United States

Code, Section 924(c)(1)(A)(i), respectively.  Additionally, the current investigation into the

ongoing violence perpetrated by members of the Bloods in and around Suffolk County, New

York has uncovered evidence, in the form of cooperating witnesses, amongst other evidence,

which supports charging members of the Bloods with racketeering crimes, in violation of

Title 18, United States Code, Sections 1959 and 1962.   To prove the racketeering crimes, the

government is required to establish that the Bloods is an "enterprise" as defined by Title 18,

United States Code, Section 1959(b)(2), that is, a group of individuals associated in fact that

engaged in, and the activities of which affected, interstate and foreign commerce.  In addition

to proving the existence of the Bloods enterprise (the "enterprise"), the government is also

required to prove each defendant's membership in the respective enterprise in which they are

a member.  Accordingly, evidence that proves either of these elements is germane.

   The source of your deponent's information and the grounds for his belief are as

follows:[1]

   1. I am a TFO assigned to work with the DEA, and have been for more

than six years.  I have also been a detective with the Suffolk County Police Department

---

   [1] Because this affidavit is submitted for the limited purpose of
establishing probable cause for a search warrant, I have not set forth each and every fact
learned during the course of the investigation.

2

("SCPD") for approximately 17 years.   During my tenure with the DEA and SCPD, I have

investigated various federal criminal violations including narcotics trafficking, use of

firearms in connection with narcotics trafficking and gang-related crimes.   During the course

of those investigations, I have conducted physical surveillance, monitored undercover

operations, debriefed cooperating witnesses and confidential informants, monitored wiretaps,

conducted controlled narcotics purchase and interviewed civilian witnesses.   The information

set forth below is based upon my experience and training as a TFO, my review of documents

and other evidentiary items, debriefing of cooperating witnesses, and my discussions with

other law enforcement agents.   Unless specifically indicated, all conversations and statements

described in this affidavit are related in substance and in part only.   Based on my experience,

and in light of the information I have learned during this investigation, I believe there is

probable cause that the SUBJECT TELEPHONES were used to communicate with others

concerning narcotics conspiracies, illegal possession of firearms and/or racketeering crimes,

and to receive and store electronic information relating to the names, nicknames, telephone

numbers and pager numbers of criminal accomplices.   It has been my experience that

narcotics traffickers and gang members often communicate by telephone, pager and other

electronic devices with their co-conspirators to plan and execute their criminal schemes.

<u>BACKGROUND OF THE INVESTIGATION AND PROBABLE CAUSE</u>

2.      The DEA and the SCPD have been conducting an investigation into

narcotics trafficking and violent crimes committed by the Bloods street gang in Suffolk

County, New York.   During the course of its investigation of this matter, DEA and the SCPD

received information that SHARIED LEGETTE, also known as "Chalk" and "Rico," and

3

ANDRE TURNER, also known as "X," are members of the Bloods street gang and are distributing controlled substances.

3.      During the course of the investigation I reviewed dozens of interviews of people arrested by the SCPD (the "Intelligence Debriefs.")  The Intelligence Debriefs contain a number of reports stating that TURNER is a member of the Bloods street gang. Likewise, there are dozens of Intelligence Debriefs also stating that LEGETTE is a member of the Bloods street gang.  I have reviewed various social media accounts used by both LEGETTE and TURNER (the "Social Media Accounts.")  The Social Media Accounts show pictures of both LEGETTE and TURNER associating with known members of the Bloods street gang.  Additionally, LEGETTE's and TURNER's Social Media Accounts contain postings that include signs and symbols that are known to be Bloods street gang signs and symbols.  Further, LEGETTE and TURNER can be seen on the Social Media Accounts displaying what I know to be Bloods street gang hand signs.  In addition, on multiple occasions LEGETTE can be seen on the Social Media Accounts displaying what appears to be firearms.  Finally, LEGETTE has been previously arrested by the SCPD and admitted to being a member of the Bloods street gang.

4.      In or about and between April 2019 and July 2019, on at least nine separate occasions, a confidential informant purchased narcotics from LEGETTE.  In total, law enforcement purchased more than 30 grams of cocaine base from LEGETTE.  On each occasion, law enforcement contacted LEGETTE by dialing (843) 214-3071.  One of these transactions is discussed below.

5.      On June 11, 2019, a confidential informant ("CI #1"),[2] under the supervision of law enforcement officers, arranged to meet LEGETTE at a pre-determined location in West Babylon, New York to purchase cocaine base.  Upon arrival at the location, CI #1 parked his/her vehicle and observed LEGETTE parked in a separate vehicle.  CI #1 exited his/her vehicle and approached LEGETTE.  CI #1 handed LEGETTE $800 in exchange for a clear bag containing a quantity of a hard rock-like substance which CI #1 believed to be cocaine base.  CI #1 then returned to his/her vehicle and left the location.  The substance was subsequently laboratory tested and was confirmed to contain cocaine in base form.  This transaction was recorded with both audio and video recording equipment.

6.      Additionally, in or about and between March 2019 and July 2019, on at least seven separate occasions, an undercover police officer ("UC") purchased narcotics from TURNER.  In total, law enforcement purchased more than 30 grams of cocaine base from TURNER.  On each occasion law enforcement contacted TURNER by dialing (631) 479-8205 and (631) 782-9991.  One of these transactions is discussed below.

7.      On April 9, 2019, a UC arranged to meet TURNER at a pre-determined location in Bay Shore, New York to purchase cocaine base.  Upon arrival at the location the UC was approached by TURNER.  The UC handed TURNER $1,000 in exchange for two clear bags containing a quantity of a hard, rock-like substance which the UC believed to be

---

[2]      CI #1 has been purchasing narcotics from LEGETTE and his associates for approximately three months.  The information provided by CI #1 has proven reliable and has been corroborated by other sources of information, including review of law enforcement databases to identify individuals describes by CI #1, telephone records, as well as physical surveillance of locations described by CI #1.  In exchange for information provided to law enforcement CI #1 is receiving financial compensation fromt the SCPD.

cocaine base. The UC then left the location. The substance was subsequently laboratory tested and was confirmed to contain cocaine in base form. This transaction was recorded with both audio and video recording equipment.

8.      Based in part on the aforementioned controlled buys, information provided by witnesses and other evidence obtained during the investigation, on or about July 16, 2019, a grand jury sitting in the Eastern District of New York returned an indictment charging LEGETTE with conspiracy to distribute and possess with intent to distribute 280 grams or more of a substance containing cocaine base, five kilograms or more of a substance containing cocaine, one kilogram or more of a substance containing heroin, 40 grams or more of a substance containing fentanyl and 100 grams or more of a substance containing fentanyl and using a firearms in connection with those drug trafficking crimes, as well as various other charges. See United States v. Rashaan Corbin, et al., 19-CR-124 (S-1) (DRH). Likewise, TURNER was charged with conspiracy to distribute and possess with intent to distribute 28 grams or more of a substance containing cocaine base. That same day, the Honorable Steven I. Locke, United States Magistrate Judge, signed warrants authorizing the arrest of LEGETTE and TURNER.

9.      On July 23, 2019, at 6:23 p.m., LEGETTE was observed by law enforcement officers exiting a black 2019 Chevrolet Camaro (the "Camaro") and entering 137 Centereach Mall, located in Centereach, New York. LEGETTE was arrested inside of 137 Centereach Mall. At the time of his arrest LEGETTE had SUBJECT TELEPHONE #1 and SUBJECT TELEPHONE #2 on his person. Law enforcement officers observed a Ruger semi-automatic handgun on the passenger side floor of the Camaro. Additionally, law

6

enforcement officers observed what appeared to be a small quantity of cocaine base on the driver's side door handle.

10.    On July 24, 2019, TURNER was arrested by law enforcement in front of 70 East Main Street, Bay Shore, New York. At the time of his arrest TURNER had SUBJECT TELEPHONE #3 on his person.

11.    Based on my training, experience and discussions with other law enforcement officers, I understand that individuals involved in conspiracies to distribute and possess with intent to distribute narcotics and who use firearms in connection with drug trafficking crimes, often do not act alone and often communicate with co-conspirators by means of cellular telephones such as the SUBJECT TELEPHONES. Such persons commonly maintain records that reflect names, addresses, or telephone numbers of their associates in their cellular telephones. They also commonly maintain records of communications such as call logs, chats and text messages in their cellular telephones. They commonly take photographs of themselves, their associates, or their property using their cellular telephones. These individuals usually maintain these records of communication and photographs in their possession and in their cellular telephones.

12.    Furthermore, based upon my training and experience, members of street gangs, including the Bloods, often communicate with one another via cellular telephone and discuss gang business and criminal activity. In addition to using cellular telephones to communicate with other gang members and discuss criminal activity, gang members also use their cellular telephones to take pictures of themselves wearing gang paraphernalia and

7

flashing gang signals, which constitutes the existence of and individual's membership in the gang.

## TECHNICAL TERMS

13. As used herein, the following terms have the following meanings:

14. Wireless telephone (or mobile or cellular telephone): A handheld wireless device used for voice and data communication through radio signals. These telephones send signals through networks of transmitter/receivers, enabling communication with other wireless telephones or traditional "land line" telephones. A wireless telephone usually contains a "call log," which records the telephone number, date, and time of calls made to and from the phone. In addition to enabling voice communications, wireless telephones offer a broad range of capabilities. These capabilities include: storing names and phone numbers in electronic "address books;" sending, receiving and storing text messages and email; taking, sending, receiving and storing still photographs and video; storing and playing back audio files; storing dates, appointments, and other information on personal calendars; and accessing and downloading information from the Internet. Wireless telephones may also include global positioning system ("GPS") technology for determining the location of the device, and a wide variety of applications, also known as "apps," which may store the user's preferences and other data. Such apps may include Facebook, Twitter, and other social media services.

15. Based on my research, I understand that the SUBJECT TELEPHONES provide not only phone and text message services, but can also be used to send and receive emails; access the Internet; track GPS data; take, store and share photographs and videos; and

8

use a wide variety of apps.  In my training and experience, examining data stored on devices

of this type can uncover, among other things, evidence that reveals or suggests who

possessed or used the SUBJECT TELEPHONES.

TECHNICAL BACKGROUND

16.     As further described in Attachment D, this application seeks permission

to locate not only data that might serve as direct evidence of the crimes described on the

warrants, but also for forensic electronic evidence that establishes how the SUBJECT

TELEPHONES were used, the purpose of their use, who used them, and when.  There is

probable cause to believe that this forensic electronic evidence can be recovered from the

SUBJECT TELEPHONES because:

a.     Data on an electronic device can provide evidence of a file that

was once on the device but has since been deleted or edited, or of a deleted portion of a file

(such as a paragraph that has been deleted from a word processing file).  Virtual memory

paging systems can leave traces of information on the device that show what tasks and

processes were recently active.  Web browsers, email programs, and instant messaging/"chat"

programs store configuration information on the device that can reveal information such as

online nicknames and passwords.  Operating systems can record additional information, such

as the attachment of peripherals, the attachment of USB flash storage devices or other

external storage media, and the times the device was in use.  Electronic devices can record

information about the dates files were created and the sequence in which they were created.

b.     Forensic evidence on an electronic device can also indicate who

has used or controlled the device.  This "user attribution" evidence is analogous to the search

9

for "indicia of occupancy" while executing a search warrant at a residence.  For example, registry information, configuration files, user profiles, email, email address books, instant messaging or chat logs, photographs, the presence or absence of malware, and correspondence (and the data associated with the foregoing, such as file creation and last-accessed dates) may be evidence of who used or controlled the electronic device at a relevant time.

        c.      A person with appropriate familiarity with how an electronic device works can, after examining this forensic evidence in its proper context, draw conclusions about how devices were used, the purpose of their use, who used them, and when.

        d.      The process of identifying the exact files, blocks, registry entries, logs, or other forms of forensic evidence on an electronic device that are necessary to draw an accurate conclusion is a dynamic process.  While it is possible to specify in advance the records to be sought, such evidence is not always data that can be merely reviewed by a review team and passed along to investigators.  Whether data stored on an electronic device is evidence may depend on other information stored on the device and the application of knowledge about how the device behaves.  Therefore, contextual information necessary to understand other evidence also falls within the scope of the warrants.

        e.      Further, in finding user attribution evidence, sometimes it is necessary to establish that a particular thing is not present on an electronic device.  For example, the presence or absence of counter-forensic programs or anti-virus programs (and associated data) may be relevant to establishing the user's intent.

17.     Based on the foregoing, and consistent with Rule 41(e)(2)(B) of the

Federal Rules of Criminal Procedure, the warrants I am applying for would permit the

examination of the SUBJECT TELEPHONES consistent with the warrants.  The examination

may require authorities to employ techniques, including but not limited to computer-assisted

scans of the entire medium, that might expose many parts of the device to human inspection

in order to determine whether it is evidence described by the warrants.

18.     The DEA seized SUBJECT TELEPHONE #1 and SUBJECT

TELEPHONE #2 on July 23, 2019.  The DEA and/or SCPD seized SUBJECT TELEPHONE

#3 on July 24, 2019.  Since their seizure, the SUBJECT TELEPHONES have exclusively

been in the custody of the DEA and/or SCPD.  Additionally, all of the SUBJECT

TELEPHONES are presently in the custody of the DEA in the Eastern District of New York.

 Because this application seeks only permission to examine the SUBJECT TELEPHONES,

which are already in law enforcement's possession, the execution of the warrants does not

involve intrusion into a physical location.  Consequently, I submit there is reasonable cause

for the Court to authorize execution of the warrants at any time in the day or night.

CONCLUSION

19.     Based on the foregoing, there is probable cause to believe that there is

located in the SUBJECT TELEPHONES, further described in Attachments A, B, and C, the

things described in Attachment D, which constitute evidence, fruits and instrumentalities of

conspiracies to distribute and possess with intent to distribute cocaine base, cocaine, heroin,

N-phenyl-N-[2-phenylethyl]-4piperidinyl] propanamide ("fentanyl"), acetyl fentanyl and/or

use of firearms in connection with a drug trafficking crime, in violation of Title 21, United

11

States Code, Sections 841(b)(1)(A)(i), 841(b)(1)(A)(ii)(II), 841(b)(1)(A)(iii),

841(b)(1)(A)(vi) and 841(b)(1)(B)(vi) and 846, and Title 18, United States Code, Sections

924(c)(1)(A)(i), 1959 and 1962.  Accordingly, the Court should issue the requested warrants.

       20.    WHEREFORE, your deponent respectfully requests that search

warrants be issued for the PREMISES KNOWN AND DESCRIBED AS: A ROSE GOLD

AND WHITE I-PHONE ("SUBJECT TELEPHONE #1"); A BLACK TCL ANDROID

PHONE ("SUBJECT TELEPHONE #2"); AND A BLACK AND SILVER I-PHONE SE

PHONE ("SUBJECT TELEPHONE #3").

Dated: Central Islip, New York
      August 6, 2019

                                    ROBERT STUEBER
                                    Task Force Officer
                                    DEA

Sworn to before me this
6 day of August, 2019

*/s/ Gary R. Brown*
THE HONORABLE GARY R. BROWN
UNITED STATES MAGISTRATE JUDGE
EASTERN DISTRICT OF NEW YORK

**Attachment A**

## ATTACHMENT A

### Property To Be Searched

The property to be searched is a ROSE GOLD AND WHITE I-PHONE
("SUBJECT TELEPHONE #1"); seized on or about July 23, 2019, from the person of
SHARIED LEGETTE, who, at the time of the seizure, was inside 137 Centereach Mall,
located in Centereach, New York and is presently in the custody of the Drug Enforcement
Administration in the Eastern District of New York.  The warrant authorizes the forensic
examination of SUBJECT TELEPHONE #1 for the purpose of identifying the electronically
stored information described in Attachment D.

**Attachment B**

## ATTACHMENT B

### Property To Be Searched

The property to be searched is a BLACK TCL ANDROID PHONE ("SUBJECT TELEPHONE #2"); seized on or about July 23, 2019, from the person of SHARIED LEGETTE, who, at the time of the seizure, was inside 137 Centereach Mall, located in Centereach, New York and is presently in the custody of the Drug Enforcement Administration in the Eastern District of New York.  The warrant authorizes the forensic examination of SUBJECT TELEPHONE #2 for the purpose of identifying the electronically stored information described in Attachment D.

**Attachment C**

## ATTACHMENT C

### Property To Be Searched

The property to be searched is a BLACK AND SILVER I-PHONE SE ("SUBJECT TELEPHONE #3"); seized on or about July 24, 2019, from the person of ANDRE TURNER, who, at the time of the seizure, was in front of 70 East Main Street, Bay Shore, New York, and is presently in the custody of the Drug Enforcement Administration in the Eastern District of New York.  The warrant authorizes the forensic examination of SUBJECT TELEPHONE #3 for the purpose of identifying the electronically stored information described in Attachment D.

**Attachment D**

## ATTACHMENT D

### Particular Things To Be Seized

All information obtained from SUBJECT TELEPHONE #1, SUBJECT

TELEPHONE #2, and SUBJECT TELEPHONE #3 (collectively, the "SUBJECT

TELEPHONES") will be maintained by the government for the purpose of authentication

and any potential discovery obligations in any related prosecution.  The information shall be

reviewed by the government only for the purpose of identifying and seizing all information

described below that constitutes evidence, fruits, or instrumentalities of a conspiracies to

distribute and possess with intent to distribute cocaine base, cocaine, heroin, N-phenyl-N-[2-

phenylethyl]-4piperidinyl] propanamide ("fentanyl"), acetyl fentanyl and/or use of firearms

in connection with a drug trafficking crime, in violation of Title 21, United States Code,

Sections 841(b)(1)(A)(i), 841(b)(1)(A)(ii)(II), 841(b)(1)(A)(iii), 841(b)(1)(A)(vi) and

841(b)(1)(B)(vi) and 846, and Title 18, United States Code, Section 924(c)(1)(A)(i), 1959

and 1962 respectively, including:

      1.    All records and information on the SUBJECT TELEPHONES

described in Attachments A, B, and C, including (a) names and telephone numbers, as well as

the contents of all call logs, contact lists, and (b) for the time period March 2013 through July

2019, text messages, emails (including those sent, received, deleted and drafted), instant

messages, photographs, videos, social media account activity (including postings and

messages), Internet activity (including browser history, web page logs, and search terms

entered by the user), and other electronic media constituting evidence, fruits, or

instrumentalities of the violations described above.

2.      Evidence of user attribution showing who used or owned the SUBJECT TELEPHONES at the time the things described in this warrants were created, edited, or deleted, such as, for example, logs, phonebooks, saved usernames and passwords, documents, and browsing history;

3.      Evidence of software that would allow others to control the SUBJECT TELEPHONES, such as viruses, Trojan horses, and other forms of malicious software, as well as evidence of the presence or absence of security software designed to detect malicious software;

4.      Evidence of the lack of such malicious software;

5.      Evidence of the attachments to the SUBJECT TELEPHONES of other storage devices or similar containers for electronic evidence;

6.      Evidence of counter-forensic programs (and associated data) that are designed to eliminate data from the SUBJECT TELEPHONES;

7.      Evidence of the times the SUBJECT TELEPHONES were used;

8.      Passwords, encryption keys, and other access devices that may be necessary to access the SUBJECT TELEPHONES; and

9.      Contextual information necessary to understand the evidence described in this attachment, all of which constitute evidence, fruits and instrumentalities of the violations described above.

As used above, the terms "records" and "information" include all of the foregoing items of evidence in whatever form and by whatever means they may have been

17

created or stored, including any form of computer or electronic storage (such as flash

memory or other media that can store data) and any photographic form.